HOSEA I. ROBINSON *vs.* WILLIAM F. SAFFORD.

The right to set off one demand against another is wholly regulated by statute.

A claim in set-off, to be available, must be due and payable when the plaintiff's action was begun; and the fact that the plaintiff has assigned his property for the benefit of his creditors, does not modify or change the rights of the parties.

A mere liabilty as indorser, existing at the time when, but not discharged till after the plaintiff commenced his action, is not allowable in set-off.

Otherwise, money received by the plaintiff for his authorized transfer of the defendant's shares of stock in a corporation prior to the commencement of the action.

Also, for amount of drafts drawn by the defendant for the accommodation of the plaintiff, and paid by the former prior to the commencement of the action.

Also, for amount paid by the defendant prior to the commencement of the action, to redeem his shares of stock in a corporation, pledged by the plaintiff under a power of attorney from the defendant, to a savings bank as collateral for money loaned to the plaintiff.

Also, for items paid prior to the commencement of the action, for protest.

Robinson *v.* Safford.

On report.

Assumpsit on an account annexed showing a balance of $10,-502.97. The defendant filed an account in set-off amounting to $28,749.48, the first three items of which were credited in the plaintiff's account.

On the back of the writ was an indorsement of the following tenor: " This suit is commenced and prosecuted by and for the benefit of John Rand, to whom the within claim was assigned by said Robinson, on Jan. 4, 1867, under R. S., c. 70, for the benefit of his creditors." Writ, dated Oct. 17, 1867.

It was admitted that the plaintiff, on Jan. 4, 1867, made an assignment of all his property for the benefit of his creditors under the statute, and that the defendant duly became a party thereto.

It appeared that on Jan. 4, 1867, the defendant owed the plaintiff $6,119.57; that prior to Jan. 4, 1867, the plaintiff had transferred for his own benefit, under a power of attorney from the defendant, fifty shares of the defendant's stock in the Portland Rolling Mills, par value one hundred dollars each; that this should have been credited to the defendant when the plaintiff received the money; that on Nov. 19, 1866, the defendant indorsed the plaintiff's note for $5,000, and paid it in June, 1868; that on Nov. 22, 1866, the plaintiff accepted two drafts drawn by the defendant upon the plaintiff for $4,500 and $4,000 respectively, in favor of Foster, Candler & Co., which were accommodation drafts loaned to the plaintiff by the defendant as so much money, and paid by the defendant in June, 1867; that on Oct. 1, 1866, the defendant indorsed the plaintiff's note for $2,000, which remains in Merchants Bank unpaid; that on May 22, 1866, the plaintiff gave his note to the Portland Savings Bank for $7,500, and as collateral security therefor, the plaintiff, under a power of attorney from the defendant, transferred one hundred shares of the Portland Company's stock; and that the defendant paid the plaintiff's note to the Portland Savings Bank to redeem his stock on Aug. 28, 1867. Defendant also paid protests on note and drafts paid by him.

After the evidence was all in, the case was withdrawn from the

jury and submitted to the full court who were to determine the balance of accounts as between Robinson's assignee and the defendant, and the amount (if any) on which the defendant is entitled to a dividend from Robinson's estate,—no judgment to be rendered against Robinson or his assignee.

*J. & E. M. Rand,* for the plaintiff.

By the legitimate debits and credits, as they stood on Jan. 4, 1867, Safford was indebted to Robinson $6,119.57, which amount the assignee claims.

The first three items in the account in set-off are credited in Robinson's account, $590.

Fifty shares in Rolling Mill were not sold, but transferred as collateral. Debt not paid by Safford.

Note of Nov. 19, 1866, not paid until June, 1868, not a valid set-off against the assignee who takes matters as they stood on Jan. 4, 1867, or within three months after.

Drafts liable to same objection. Not paid until June, 1867.

Note to Savings Bank same. Not paid until Aug. 28, 1867.

None of the above claims existed against Robinson when he made the assignment, or within the three months allowed to creditors to become parties to it.

Mere contingent claims. There is no provision in assignment statute for proving contingent claims, as in case of insolvent estates under administration. And no occasion for such, as claims not provable against the estate are valid against the debtor and his future earnings.

The claims filed in set-off are valid against Robinson, notwithstanding the assignment, and Safford's signature to it, but are not available against the claim of the assignee.

The assignee is entitled to judgment for $6,119.57, and interest.

*Shepley & Strout,* for the defendant.

DICKERSON, J.　On the 4th day of January, 1867, the plaintiff made an assignment of all his property for the benefit of all his creditors, under the statutes of this State, and the defendant duly became a party thereto.　On account of the conflicting claims of the creditors, the assignee brings this action to obtain an adjudication upon the state of the accounts as between the defendant and himself as assignee of the plaintiff.

The plaintiff testifies, and the assignee claims, that as the accounts stood Jan. 4, 1867, the defendant was indebted to the plaintiff in the sum of $6,119.57.　The defendant files his account in set-off in the sum of $28,159.40 over and above the amount credited to him in the plaintiff's account; and the question presented is what items, if any, in the defendant's account in set-off the estate of the plaintiff, in the hands of the assignee, is legally chargeable with.

The right to set off one demand against another, in this State, is wholly regulated by statute.　*Call* v. *Chapman*, 25 Me. 128.　A claim to be available, in set-off, must be due and payable at the time of the commencement of the plaintiff's action.　A mere liability of the defendant for the plaintiff, existing at the time, but not satisfied by the former till after the commencement of the suit, cannot be allowed in set-off.　*Houghton* v. *Houghton*, 37 Me. 72.

While it might be desirable for the assignee to have a general adjudication upon the whole subject of the pecuniary relations between the assigner and the defendant, it is only competent for the court to decide the single question presented in this action; to do this the court has only to apply the law of set-off, as above stated, to the facts in the case.　The fact that there has been an assignment for the benefit of creditors does not modify or change the rights of the parties under the statute authorizing a set off of mutual claims.　The plaintiff gains no advantage, in this respect, nor does the defendant lose any of his rights on this account.

No question arises with respect to the first three items in the defendant's account, amounting to $590.

The charge of Dec. 13, 1866,—" fifty shares stock Rolling Mills,

$5,000," accrued prior to the assignment. This stock was sold by the plaintiff under a power of attorney from the defendant, the amount charged was received by him and he testifies that this sum should have been credited to the defendant at the time of the sale of the stock. This charge is a proper item to be allowed in set-off.

The sum of $5,000, paid by the defendant as indorser of the plaintiff's note of Nov. 19, 1866, was not paid till June, 1868, several months after this action was commenced, and is not allowable in set-off against the plaintiff's claim in this action. The liability was a contingent one, and no actual indebtedness had accrued to the defendant prior to the commencement of this suit.

The drafts drawn on Foster, Candler & Co., by the defendant for the accommodation of the plaintiff, amounting to $8,500, are placed on a different footing from the last item considered. In these cases, though the defendant's liability was originally contingent, it had ripened into an absolute claim against the plaintiff before the commencement of this suit, by reason of the defendant's paying the drafts. It is clear that the statute of set-off allows such claims to be filed.

The plaintiff's note of Oct. 1, 1866, for $2,000, indorsed by the defendant, had not been paid by him when this suit was brought; and that item in the defendant's account cannot be properly filed in set-off in this action.

Under his power of attorney from the defendant, the plaintiff pledged one hundred shares of the Portland Company stock to the Portland Savings Bank, on May 26, 1866, as security for his note of $7,500 upon which he obtained that sum. In order to get possession of his stock the defendant was obliged to pay the plaintiff's note, amounting to $7,653, on the 26th Aug., 1866. This item must be allowed in set-off in accordance with the principles before stated. The two items paid for protest, amounting to $4.63, should also be allowed.

In accordance with the foregoing statement, the amount to be allowed in set-off is ($21,747.63) twenty-one thousand seven hundred and forty-seven dollars and sixty-three cents. From this sum

there is to be deducted the plaintiff's claim of $6,119.57, leaving a balance due the defendant of fifteen thousand six hundred and twenty-eight dollars and six cents; and this is the amount on which the defendant is entitled to a dividend from the plaintiff's estate, so far as that question can be determined in this action.

APPLETON, C. J.; CUTTING, DANFORTH, and TAPLEY, JJ., concurred.